# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:17-00016-CR-RK |
| (1) VICTOR MATIAS-TORRES; | ) |
| (2) LUIS ALFREDO VILLEGAS-ROSA; | ) |
| (3) LUIS GABRIEL VILLEGAS-ROSA; | ) |
| (6) JOSE MORALES-DELGADO; AND | ) |
| (8) ISMAEL MARQUEZ, | ) |
| Defendant. | ) |

## ORDER

On September 9, 2019, the Court called this case for an expected six-week jury trial of the five codefendants in the above-styled case. Defendant Luis Gabriel Villegas-Rosa did not appear for trial because of an emergency surgery he underwent the prior week, which required hospitalization. Shortly before voir dire was set to begin on the morning of trial, counsel for Luis Gabriel Villegas-Rosa orally moved for a continuance, to which all parties agreed.

The Court, however, believed continuing such a complex case at this late stage would result in a substantial and unnecessary waste of already expended judicial resources. In the interest of managing the trial fairly, effectively, and efficiently, the Court severed the principal codefendant, Victor Matias-Torres, from the others for trial; granted a continuance as to them; and proceeded with voir dire as scheduled for Matias-Torres only. (Doc. 351 at 19.) The Court then selected a jury but granted a one-week continuance of further proceedings to accommodate Matias-Torres's request for time to recalibrate his defense. Following voir dire, the Government, which had opposed severance, requested a statement of the Court's reasons for its severance decision.

On September 11, 2019, Matias-Torres requested to change his plea, and a change-of-plea hearing was held. Matias Torres sought to plead guilty under a "binding" plea agreement providing for a 30-year sentence. (Doc. 350 at 4); *see* Fed. R. Crim. P. 11(c)(1)(C). During the hearing, the Government's lead attorney, David Raskin, stated the following as his reason for the plea offer:

> [T]he primary and, in fact, only reason that the Government lowered its offer is [1] the manner in which the Court has handled this case, including [2] the severance ruling, [3] the lack of rationale provided to the parties for that ruling, [4] the absence

of rulings on numerous pending motions, [5] a surprise adjournment of the trial date initially, and [6], in fact, the surprise severance motion. . . . So those are the reasons that the Government lowered its offer and wanted to make sure the record was clear on that.

. . . .

[T]he government expected that the Court would be able to handle a complicated case. And the reason we gave our plea deals is we lost that confidence.[1]

(Doc. 352 at 36.) The plea was conditionally accepted. The Court now memorializes its reasons for the severance and continuance order and various other pretrial rulings.

## Discussion

I.  **"The Manner in Which the Court Has Handled This Case"**

The Superseding Indictment in this case charges eight defendants with 32 criminal counts. (Doc. 205.) Principally, the defendants are charged with conspiring to participate in the conduct and affairs of an organized criminal enterprise though a pattern of racketeering activity, including murder, assault, robbery, witness tampering, extortion, and drug trafficking. Matias-Torres is charged as the leader of the enterprise.

On July 23, 2019, the Court held a status conference with counsel to discuss logistics in managing the trial. Discussions included the trial's expected length (at least six weeks); rearrangement of the courtroom to accommodate the five codefendants and their counsel and staff; procedures for managing pretrial questionnaires for approximately 150 potential jurors; the need for interpreters for some of the defendants; and the likelihood of further continuances following the Government's upcoming production of unredacted materials. Trial was set to begin on September 3, 2019.

On July 24, 2019, the Court entered a Pretrial Scheduling Order, which the parties had jointly proposed and submitted to chambers by email. (Doc. 284.) The Order required the Government to produce a witness list by August 9, 2019. (*Id.* at 1.) It also required the Government to produce unredacted copies of previously disclosed discovery, the identities of informants, and witness's prior statements (known as "Jencks Material") by August 20, 2019. (*Id.* at 1-3.)

---

[1] The Court observes that this final comment was obviously improper in a judicial forum. The Court attributes the misstep, in part, to counsel's likely exhaustion in preparing this case for a lengthy jury trial. This Court's confidence in its ability to fairly and efficiently manage this and other complex cases remains unshaken.

On August 23, 2019, the Court held a pretrial conference. Counsel for Defendant Luis Alfredo Villegas-Rosa requested to delay the start of trial by a couple of days because he needed additional time to review the Government's production of unredacted materials, which he characterized as "surprising" and "voluminous." The Court proposed a one-week delayed start date of September 9, 2019, to which all defendants agreed. The Government, however, strenuously objected on the grounds that (1) the production was not surprising; (2) a one-week delay would cause a logistical "nightmare" for rescheduling witnesses; and (3) the delay would cause "witness security issues." The Court overruled the Government's objections and delayed the start of trial to September 9, 2019.

On August 27, 2019, the Court held an additional pretrial conference to discuss remaining logistical issues and pretrial matters, including the parties' various pending motions in limine and Defendant Jose Morales-Delgado's motion to sever. Discussions focused on the Government's intent to introduce evidence of a redacted five-hour "confession" of Matias-Torres and evidence of his affiliation with a notorious gang (the "Almighty Latin King and Queen Nation"). The other codefendants argued that references to Matias-Torres's "Latin King" gang affiliation would be unfairly prejudicial to them and that the Government's proposed redactions did not sufficiently shield their identities under *Bruton v. United States*, 391 U.S. 123 (1968). In contrast, counsel for Matias-Torres made clear that his client preferred to have his whole statement played to the jury, and he objected to the redactions for lack of completeness. The Government argued that this evidence was relevant to all defendants because it tended to show the existence of an "enterprise." The Court deferred ruling on these issues to allow time for negotiation of a potential stipulation and informed counsel that it would take these issues up during an extended break following voir dire.

On September 9, 2019, the Court called the case for trial. Seventy-seven of the original 150 jurors were waiting in the wings for trial (following an initial round of agreed strikes for cause the previous week (*see* Doc. 339)). On September 5, 2019, the Court was informed that Luis Gabriel Villegas-Rosa had undergone emergency surgery. Accordingly, the Court instructed its staff to immediately notify the Court if a motion for continuance was filed prior to the September 9, 2019 start date. However, neither defense counsel nor the Government filed a motion for continuance until the morning of trial.

On the morning trial was set to begin, the Court severed Matias-Torres from the others and proceeded with voir dire as to him only, due to the apparent waste of resources that would flow from continuing the trial and serious fairness concerns with conducting a joint trial that included Matias-Torres. The Court also delayed swearing the jury and opening statements until the following week, September 16, 2019, because counsel for Matias-Torres requested an additional few days to adjust his defense in light of the Court's rulings. The Court also scheduled additional pretrial conferences to take up motions in limine and jury instructions on September 11 and 12 and prior to trial on the morning of September 16, 2019.

## II. Severance

"If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials." Fed. R. Crim. P. 14(a). This Court "has the discretion to order severance under Fed. R. Crim P. 14 if the defendant will be prejudiced by the joinder, such as by mutually antagonistic defenses." *United States v. Joiner*, 418 F.3d 863, 868 (8th Cir. 2005). "A defendant must show a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* (quotation marks and citation omitted). Although there is a well-settled preference for joint trials of jointly indicted co-conspirators, one of the main reasons for this preference is to promote efficiency. *United States v. Carter*, No. 10-00351-02-CR-W-GAF, 2011 WL 6402433, at *4 (W.D. Mo. Dec. 7, 2011), report and recommendation adopted, 2011 WL 6402403 (W.D. Mo. Dec. 21, 2011).

Although a joint trial of all five codefendants would have been proper in this case, this trial could not proceed as planned the morning of trial due to the unexpected absence of Luis Gabriel Villegas-Rosa. *See Crosby v. United States*, 506 U.S. 255, 262 (1993) (a defendant must be present at the beginning of trial to proceed *in abstentia*). Because of this, the Court was faced with making a difficult management decision. The Court opted to sever Matias-Torres for immediate trial because of concerns with judicial economy and fairness to all parties.

### A. Judicial Economy

On September 9, 2019, the Court had already invested substantial financial and manpower resources in preparing for trial. This Court and the Magistrate Court had held several status conferences and pretrial conferences to govern logistics. The courtroom was rearranged several times, and new equipment was installed to accommodate the five defendants and their lawyers and

4

staff. Six additional United States Marshals were called in from out of town to provide security, and they were present in the courtroom. Three interpreters were also present in the courtroom and ready to proceed. The Court had previously summoned more than 150 jurors to fill out pretrial questionnaires. Sixty jurors were in the courthouse waiting for jury duty when the motion for continuance was filed, and 17 additional jurors were summoned for the afternoon.

Rather than waste the investment in these efforts, the substantial funding, and the cleared schedules of chambers staff, courthouse staff, and security staff, it was incumbent on the Court to proceed with trial as scheduled if it could be done fairly, effectively, and efficiently. The Government argued that the Court's efficiency concerns were moot because a second, essentially identical trial would inevitably occur, so the Court might as well enter a continuance. However, as discussed below, there were appreciable differences between the extent of evidence that would have been admissible against Matias-Torres, as opposed to the other defendants. Moreover, the likelihood of a second, identical trial seemed unlikely when considering the reality of likely plea negotiations that would stem from the first trial. For these reasons, the Court believed efficiency concerns weighed in favor of proceeding with trial immediately as to Matias-Torres.

### B. Fairness to the Government

Prior to the morning of trial, the Government consistently maintained that the trial needed to proceed quickly due to security risks to its witnesses. The Government, however, changed its tune on the morning of trial on September 9, 2019, and agreed to a trial continuance for all five codefendants. Previously the Government believed and argued the risks to witnesses were "omnipresent." Because of this concern, the Government elected to not utilize the "voluntary discovery" or "statutory discovery" method as to many witness names and statements. Instead the Government elected to redact witness names from discovery reports and provide the unredacted version of discovery two weeks before trial on August 21, 2019. *See* Fed. R. Crim. P. 26.2 (witness statements must be produced on motion after a witness testifies on direct examination); 18 U.S.C. § 3500 (same). The Government's concern regarding security risks to witnesses contributed to the Court's decision to proceed with trial immediately as to Matias-Torres.

The Government argued that severing the trial would unfairly expose its "playbook" to the other codefendants, who would be tried later. Although the Government's concern with preserving its counsel's mental impressions and trial strategy appears to be legitimate, the Court believes the severance order will not result in significant prejudice to the Government. It does not require the

Government to divulge work product under Rule 16(a)(2) of the Federal Rules of Criminal Procedure, and the Government already has an obligation under *Brady v. Maryland* "to divulge all evidence favorable to the accused that is material either to guilt or to punishment." *United States v. Walrath*, 324 F.3d 966, 969 (8th Cir. 2003) (quotation marks and citation omitted). The Court is also cognizant that "[t]he government's interest is justice, not just winning." *Walrath*, 324 F.3d at 969; *see also Berger v. United States*, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.").

### C. Fairness to the Defendants

Although the Court believes the various motions in limine that were on file at the time of the severance ruling did not present unmanageable problems, the Court perceived some risk in exposing the other codefendants to the details of Matias-Torres's Latin King gang affiliation and five-hour "confession." On the one hand, the Court made clear at the August 27, 2019 pretrial conference that at least some of this evidence was relevant to establishing the existence of an enterprise as to all defendants. However, on the other hand, there was still a dispute about how much of this evidence was admissible in a joint trial. The parties were given extra time to discuss an agreement about the extent of admissibility on these issues, but no stipulation was reached prior to the morning trial was scheduled.

The codefendants also had competing interests on this issue—Matias-Torres being in one camp and the other codefendants in another. Specifically, the Government sought to introduce expert testimony to explain Matias-Torres's affiliation with the Latin Kings, but it was undisputed that the other codefendants were not affiliated with this organization. Furthermore, with respect to the five-hour statement, Matias-Torres objected to the Government's proposed redactions because he believed the *whole* recording should be played to the jury in the interest of completeness. In stark contrast, the other codefendants objected to the Government's proposed redactions as insufficient to satisfy *Bruton*—some because they believed they were still identifiable despite the redactions and one because he was not referenced in Matias-Torres's statements, and the jury might have incorrectly speculated that he was referenced (Ismael Marquez). *See United States v. Cianciulli*, 476 F. Supp. 845, 846 (E.D. Pa. 1979) (potential for jury confusion weighs in favor of severance).

Although the Court is confident that it could have properly and fairly managed these issues with pretrial rulings, limiting instructions, and during-trial rulings on objections, the Government's offer of proof (up to and including the morning of trial) did not provide sufficient context to make a definitive pretrial ruling. Given the somewhat higher risk of unfairness in trying Matias-Torres jointly with the other codefendants, and the streamlining effect severing him would have on both trials, he was the logical choice to proceed to trial immediately. For these reasons, the Court believed severing Matias-Torres for immediate trial and continuing the joint trial of the other four codefendants was fair to both parties and the most efficient means of proceeding with the case.[2]

## III. "The Lack of Rationale" for the Severance Ruling

The Government suggested during Matias-Torres's change-of-plea hearing that one of the reasons it offered a plea deal was because the Court did not provide a sufficient rationale for its severance decision. When it became apparent that all parties agreed to a continuance of the trial due to the absence of Luis Gabriel Villegas-Rosa, the Court stated as follows:

> THE COURT: Mr. Raskin what would be the pitfalls, other than the obvious logistical hardships on the United States, to sever Mr. Victor Matias-Torres and proceed with his trial? And there are pros and cons to that. A significant pro would be the *Bruton* issue with his lengthy statement [being] untangled. And what other pitfalls are there besides the logistical complications for the government?
>
> . . . .
>
> I do agree that in the trial of the other four defendants, outside of Victor Matias-Torres, that I can conceive of parts of those statements coming in as you mentioned, so I do get that. And one other positive is going forward with Victor Matias-Torres, the Court will be able to more precisely be able to make rulings on some of these very fine points. I think the precision will be more exact in having Mr. Matias-Torres moving forward with his trial. And the logistics, I very much understand that, but I do know your -- or your witnesses should be queued up to proceed in the next couple of two, three weeks. So that's my inclination is to move forward with Matias-Torres. . . .
>
> . . . .
>
> [T]his district has expended a great deal of money on bringing in 175 folks last week, bringing in 60 folks today, bringing in 17 more tomorrow. We are already in motion. And at this point, I am -- my job is to try to manage this trial fairly, effectively, and efficiently.

---

[2] Although Matias-Torres initially objected to severance, the Court allowed an accommodation of an additional one-week delay prior to the start of trial to allow him to prepare, and his counsel ultimately conceded at the change-of-plea hearing that the severance order neither helped nor hurt his case.

> MR. RASKIN: I understand that, Your Honor, but we're going to have to do it again anyway. Right? I mean, so -- we totally appreciate the work that the courthouse has done and the fact that we've intruded on jurors' livelihoods and lives.
>
> THE COURT: And it's way more than that. I mean, that's just a start of the folks -- the marshals that have come in from out of state, the extra resources, but I do get your point. . . .
>
> . . . .
>
> All right. My plan is to, because of the situation we find ourselves in, for a variety of reasons, to sever off Matias-Torres and move forward with the trial.

(Doc. 351 at 14-21.) In light of this record, the Court disagrees with the Government that the Court failed to provide a sufficient rationale on the record for its severance decision. *Cf. United States v. Guarino*, 517 F.3d 1067, 1068–69 (8th Cir. 2008) ("the district court is not required to provide a full opinion in every case" even during sentencing, when the district court has a unique responsibility to provide reasons for its decision).

## IV. "The Absence of Rulings on Numerous Pending Motions"

The following motions were pending at the time of the severance ruling:

- The Government's motion in limine to admit expert testimony on gang evidence. (Doc. 206.)

- The Government's motion in limine to admit Rule 404(b) evidence of prior bad acts. (Doc. 278.)

- The Government's motion in limine to admit out-of-court statements. (Doc. 295.)

- The defendants' joint motion in limine to exclude all gang evidence related to the Latin Kings. (Doc. 299.)

- Defendant Ismael Marquez's third motion to sever him for separate trial. (Doc. 304.)

- Various defendants' *Bruton* objections to Matias-Torres's statements to police, and other proposed Rule 404(b) evidence. (Doc. 305; Doc. 307; Doc. 310; Doc. 311; Doc. 313; Doc. 322.)

- The Government's sealed motion to exclude a prior conviction of one of its witnesses. (Doc. 320.)

The Court is not persuaded that the lack of a definitive ruling on these motions and objections should have impacted the Government's prospects of prevailing at trial. The Court allowed the parties time for oral argument on the motions during the August 27, 2019 pretrial conference. During that conference, the focal point was the admissibility of a Latin King gang

expert; Matias-Torres's history as a member of the Latin Kings; and explanatory information about that organization.[3] The Court forecasted that it was "inclined to allow" first-hand testimony about these issues because there seemed to be "legitimate reasons why the jury needs to understand the influence of the leader of the enterprise." However, it was unclear from the Government's proffer what evidence would show the extent of this influence, and it was apparent that the other codefendants intended to dispute the extent of this influence and their knowledge about Matias-Torres's notoriety with respect to the Latin Kings. Furthermore, the Court expressed concern that "at some point, it becomes unfair if . . . obviously too much detail is described, and the attention is diverted more to the glamour and the horrific aspects of that."

Regarding the Government's motion in limine to admit expert testimony on the Latin Kings gang, the Court took up arguments on August 27, 2019, and forecasted to the parties that if they were unable to stipulate to the extent of the expert's information, the expert testimony would be limited to a rebuttal phase of the trial. Regarding the Government's motion in limine to admit Rule 404(b) evidence of prior bad acts, the Government proffered an extensive criminal history of Matias-Torres' prior killings, violence, and drug offenses in other states and Puerto Rico, much of which appeared to be unconnected to the other codefendants or the charged enterprise.[4] (Doc. 278 at 4-7.) Regarding the Government's motion in limine to admit out of court statements states that it is "intended to give the Court and defense counsel *a preview* of the types of evidentiary questions that may arise with the aid of *assorted* examples." (Doc. 296 at 1 (emphasis added.)) This motion contains several largely conclusory and summary statements to justify admitting evidence at trial without providing a written or oral proffer to the Court.[5]

Given the broad nature of the proffered evidence in some areas and the lack of clarity about the Government's proffer in other areas, the Court reserved ruling on these issues. However, the

---

[3] The Court had already expressed its inclination to deny the Government's sealed motion to exclude a prior conviction of one of its witnesses (Doc. 320) at the August 23, 2019 pretrial conference, and the Government did not press its hearsay arguments (Doc. 295) at either pretrial conference.

[4] This motion also appears to reveal that some of the codefendants were incarcerated during part of the charged RICO conspiracy.

[5] As a few examples, the motion asserts that certain witnesses would testify about "common knowledge;" "statements made . . . regarding Luis Gabriel Villegas-Rosa's attempt to kill" them; why a witness "changed his story;" "false statements made by witnesses" to police; and the fact that "certain victims and witnesses refused to talk to [the police]." (Doc. 295 at 18.)

Court made clear—at the end of the August 27, 2019 pretrial conference, prior to addressing the motion for continuance on September 9, 2019, and after voir dire concluded—that the parties would have an additional opportunity to address these issues. Furthermore, as is true in any jury trial, especially a complex prosecution, context matters to determining admissibility. To the extent gray area remained, these issues would have been properly reserved for rulings on contemporaneous objections during trial. For these reasons, the Court does not believe the lack of a ruling on these motions was unfairly prejudicial to the Government.

V.   **The "Surprise" One-Week Delayed Start from Tuesday, September 3, 2019, to Monday September 9, 2019**

On August 23, 2019, counsel for Defendant Luis Alfredo Villegas-Rosa requested to delay the start of trial by a couple of days because he needed additional time to review the Government's production of unredacted materials. The Court proposed a one-week delayed start date of September 9, 2019, to which all defendants agreed. The Government, however, strenuously objected on the grounds that (1) the production was not surprising; (2) a one-week delay would cause a logistical "nightmare" for rescheduling witnesses; and (3) the delay would cause "witness security issues." The Government also contended that it would be "outrageous" to disrupt the parties' agreement to exchange unredacted information two weeks prior to trial and allow the disclosed information to hang in the balance for an additional week. The Court overruled the Government's objections and delayed the trial to September 9, 2019.

The Court disagrees that the additional week delayed start was either a surprise or unfairly prejudicial to the Government. The Government does not dispute that this is a uniquely complex case that involves dozens of witnesses and voluminous discovery, yet it refused to provide unredacted discovery to the defendants until two weeks before trial. The Court acknowledges the concerns with witness security in the Government's decision to delay disclosure. However, the Government had previously made a partial concession on this issue by agreeing to unredact previously redacted reports produced in discovery two weeks before trial instead of during trial. *See* Fed. R. Crim. P. 26.2; 18 U.S.C. § 3500. The Government failed to articulate why an extra week after the defense already had access to the unredacted material for two weeks posed any significant additional witness security concerns.

Furthermore, the defense's request for additional time should have come as no surprise to the Government. Defense counsel made clear during the July 23, 2019 status conference that they

10

might be making such a request (stating "I don't know what I don't know"), and the Court expressly suggested the idea of a one-week delayed start to alleviate the defense's potential preparedness concerns. *See States v. Vesey*, 330 F.3d 1070, 1072 (8th Cir. 2003) (stating that the Court is "afforded broad discretion when ruling on requests for continuances" and that the Court properly considers "the particular circumstances of the case," including "whether counsel had sufficient time to prepare for trial") (citation omitted).[6]

## VI. The "Surprise" Severance Ruling

The Court does not believe the *sua sponte* nature of the severance decision was improper or unfairly prejudicial to the Government. The Court acknowledges that no party requested to sever Matias-Torres and proceed with trial as to him alone. However, the parties do not have the same interests as the Court in acting as a steward of judicial resources, which likely explains why no party offered severance as a practical solution despite the fact that all defendants ultimately acquiesced. The Government was given a fair opportunity to respond several times in open court to the Court's proposed severance order, but it did not raise the issue of unfair surprise. The Court simply was not convinced by the Government's arguments that severing Matias-Torres for immediate trial was improper. *See Cianciulli*, 476 F. Supp. at 847 (*sua sponte* ordering severance of 15 defendants into three separate trials); *See United States v. Smith*, 602 F.2d 834, 837 (8th Cir. 1979) (referencing a district court's *sua sponte* severance order in passing).

## VII. Continuance

The Speedy Trial Act of 1974, as amended, mandates the commencement of the trial of a defendant within 70 days from the defendant's first appearance before a judicial officer of the Court in which the charge is pending. In computing the 70-day time period, the periods of delay set forth in 18 U.S.C. § 3161(h) are to be excluded. Any period of delay resulting from a

---

[6] The Court further observes that the Court's staff went to exceptional lengths to prepare for trial on September 3, 2019. Counsel in this case opted to use a 20-page juror questionnaire, to be completed by the 150-person venire and reviewed by the attorneys in advance of trial—3000 pages of material. The venire was scheduled to appear and complete questionnaires on August 28, 2019, but the jury coordinator advised the Court during the July 23, 2019 status conference that, due to the volume of material, the questionnaires could not be processed and distributed until close of business August 30, 2019 (the Friday before trial). Because the Court was concerned that counsel would not have enough time to review the questionnaires, the Court requested extra efforts from the jury coordinator to have the questionnaires available for access by the morning of August 30, 2019. Ultimately, due to the jury coordinator's exceptional service, the questionnaires were available to counsel early in the afternoon on August 29, 2019.

continuance granted on the Court's own motion or at the request of a defendant is excludable if the Court finds the ends of justice served by the taking of such action outweigh the best interest of the public and the defendant in a speedy trial, provided the Court sets forth the reason for such finding.

Section 3161(h)(7)(C) provides that a continuance shall not be granted because of general congestion of the Court's calendar. In ordering the continuances of trial as to all five codefendants from September 3, 2019, to September 9, 2019; as to Luis Alfredo Villegas-Rosa, Luis Gabriel Villegas-Rosa, Jose Morales-Delgado, and Ismael Marquez, from September 9, 2019, to an appropriate time later determined to be October 28, 2019 (*see* Doc. 353); and as to Victor Matias-Torres from September 9, 2019, to September 16, 2019, the Court did not do so because of congestion of its calendar. The Court further finds as follows:

1. In light of the circumstances set out above, regarding the continuance as to all five codefendants from September 3, 2019, to September 9, 2019, and the continuance as to Victor Matias-Torres from September 9, 2019, to September 16, 2019, it would have been unreasonable to expect defense counsel to prepare this criminal action adequately for trial prior to the rescheduled time, and failure to grant the continuances would have denied defense counsel the reasonable time necessary for effective preparation.

2. In light of the circumstances set out above, failure to grant the continuances as to all five codefendants from September 3, 2019, to September 9, 2019; as to Luis Alfredo Villegas-Rosa, Luis Gabriel Villegas-Rosa, Jose Morales-Delgado, and Ismael Marquez from September 9, 2019, to October 28, 2019; and as to Victor Matias-Torres from September 9, 2019, to September 16, 2019, likely would have resulted in a miscarriage of justice.

3. In light of the circumstances set out above, failure to grant the continuance as to Luis Gabriel Villegas-Rosa from September 9, 2019, to October 28, 2019, would have denied him the right to be present at the initiation of trial.

4. In light of the circumstances set out above, the ends of justice served by granting the above-referenced continuances outweighed the best interest of the public and the defendants in a speedy trial.

**Conclusion**

The Court's September 9, 2019 severance and continuance order, along with the other pretrial orders discussed herein, were made for the reasons stated above and on the record in open court.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: September 18, 2019